### THEODORE P. BUCHER *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.   Nov. 17, 1879; March 14. — April 9, 1881.   COLT, J., absent.

The St. of 1877, c. 232, enacting that the provisions of the Gen. Sts. c. 84, § 2, "prohibiting travelling on the Lord's day, shall not constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by a person so travelling," does not apply to an action brought after it went into effect for an injury received before its enactment.

In an action against a railroad company for personal injuries occasioned to the plaintiff while a passenger in one of its cars, it appeared that he was a travelling agent for an insurance company; that his sister, who was unwell and was temporarily residing in a distant State, had written to him that she had had a severe attack of illness and desired to be carried to her home; that he had written to her, stating his situation, that he was travelling, and asking her to arrange with a friend to bring her as far as a certain city, and that he would make arrangements for some one to accompany her from that place to her home, if her friend could not come with her any farther; that he expected an answer to his letter would reach B. in a week, which would decide whether he would have to go after her, or whether her friend would take her home; that, after writing this letter, he was absent from B. for about three weeks, travelling on his insurance business, but expected to reach there on the evening of a certain Saturday, for the purpose of getting his mail, procuring funds and attending to his business at the office of the insurance company; and that he missed a connection of trains, and, being desirous to reach B. in order that he might receive the expected reply from his sister, took passage on a freight train of the defendant on the following Sunday morning, and received the injuries complained of.  *Held,* that there was no evidence which would justify the jury in finding that the plaintiff was travelling from necessity or charity, within the meaning of the Gen. Sts. c. 84, § 2.

TORT for personal injuries occasioned to the plaintiff, on Sunday, August 6, 1876, while a passenger in one of the defendant's cars.   The answer set up that the plaintiff was travelling on

the Lord's day in violation of law. At the trial in this court, before *Ames*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

The case was argued in November 1879, and reargued in March 1881.

*E. D. Sohier & C. A. Welch,* for the defendant.

*A. A. Ranney,* for the plaintiff.

ENDICOTT, J. The first question in this case is whether the St. of 1877, c. 232, applies to actions brought after it went into effect, to recover damages from a common carrier of passengers for injuries received before its enactment. The statute is brief, and is in these words: " The provisions of section two of chapter eighty-four of the General Statutes, prohibiting travelling on the Lord's day, shall not constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by a person so travelling." It took effect upon its passage, May 15, 1877. The alleged injury was received in August 1876, and this action was brought in March 1878.

It may be stated as a general rule applicable to the interpretation of a statute, that it shall have a prospective operation only, unless it is distinctly expressed in the statute, or clearly to be implied from its provisions, that it is to have a retroactive effect. It was said by Chancellor Kent, that a statute is not to have any retrospective operation; and Mr. Justice Merrick, in commenting on this in *Garfield* v. *Bemis,* 2 Allen, 445, said: " This statement of the doctrine, however, is undoubtedly subject to some qualification. It is not strictly and rigidly applicable in all cases in respect to statutes of a remediable character. But it is always to prevail except where a different intent is distinctly indicated and provided for. And the general rule is laid down, as one not subject to any exception, that they are never to be allowed to have a retroactive operation, where it is not required either by the express command of the Legislature or by an unavoidable implication arising from the necessity of adopting such a construction in order to give plenary effect to their provisions." *Gerry* v. *Stoneham,* 1 Allen, 319. *King* v. *Tirrell,* 2 Gray, 331. *Whitman* v. *Hapgood,* 10 Mass. 437. *Murray* v. *Gibson,* 15 How. 421.

Though the language of this statute is sufficient to embrace cases arising as well before as after its passage, yet there is no express provision that it shall be retroactive, and there is no necessity for so construing it, as it will have full effect if confined to cases subsequently arising. In *North Bridgewater Bank* v. *Copeland*, 7 Allen, 139, the St. of 1863, *c.* 242, was under consideration, which provides that " Usury between the payee and the maker of a promissory note, payable on time, shall not be a defence to an action thereon, brought by the indorsee to whom the same was indorsed before maturity, for value and without notice, express or implied, of the usury ; " and the court held that it did not apply to contracts which were in existence at the time of the enactment. The language of that statute in making a change in the existing law is substantially the same as the language of the St. of 1877, *c.* 232 ; and, having been passed upon by this court, it is not to be presumed that the Legislature intended to give any larger effect to the provisions of the St. of 1877. We are therefore of opinion that the St. of 1877 does not apply to this case, and that the defendant could properly set up that the plaintiff was travelling on the Lord's day.

The cases, in which it has been held that statutes regulating the rules of practice in the conduct of suits may apply to actions brought before as well as after their enactment, have no application to this case ; they relate to forms of proceeding, and do not materially affect the rights of parties. *Robbins* v. *Holman*, 11 Cush. 26. *George* v. *Reed*, 101 Mass. 378, and cases cited. In the case at bar, this defence was a legitimate and proper one, under the law existing at the time of the alleged injury.

Nor can we hold, upon the facts reported, that there was any evidence which would warrant a jury in finding that the plaintiff was travelling on the 6th of August, which was the Lord's day, from necessity or charity, within the meaning of the Gen. Sts. *c.* 84, § 2. It appears from his reported testimony, that he was a travelling agent in New England for a fire insurance company ; that his sister was unwell, and was temporarily residing in Minnesota ; that on the second week of July she had written to him that she had had a severe attack of illness, and desired to be carried home to Philadelphia. And about July 15 he

had written to her, stating his situation, that he was travelling, and asking her to arrange with a friend to bring her as far as Chicago, and that he would make arrangements for some one to accompany her from Chicago to Philadelphia, if her friend could not come with her any farther. To this letter he expected an answer to reach Boston in a week, that is, about July 21, which would decide whether he would have to go after her, or whether her friend would take her home. In his cross-examination, he stated, "When I wrote to my sister, it was to see what arrangement she could make to be brought home that might save me from leaving my field of labor." After writing this letter, he appears to have been absent from Boston, travelling on his insurance business, until Saturday, August 5. He had expected to arrive in Boston that evening, where he was going for his mails and to procure funds, and to attend to his business at the office of the general agent of his company. But he missed a connection of trains, and being desirous to reach Boston, in order that he might receive the expected reply from his sister, he took passage on a freight train of the defendant on the following morning, which was Sunday, and received the injuries complained of. And it is contended that he was travelling from necessity or charity on that day.

The act of the plaintiff in thus travelling on the Lord's day was not an act of necessity within the meaning of the statute. *Connolly* v. *Boston*, 117 Mass. 64. *Jones* v. *Andover*, 10 Allen, 18. *Commonwealth* v. *Sampson*, 97 Mass. 407. *Commonwealth* v. *Josselyn*, 97 Mass. 411. *McGrath* v. *Merwin*, 112 Mass. 467. *Smith* v. *Boston & Maine Railroad*, 120 Mass. 490. *Davis* v. *Somerville*, 128 Mass. 594.

It remains to be considered whether the travelling was an act of charity. In order to constitute an act of charity, such as is exempted from the Lord's day act, the act which is done must be itself a charitable act. The act of ascertaining whether a charity is needful is not the charity; but, so far as the statute is concerned, the only question in that case would be, Is this act a necessary act? That involves the question, whether the act is one which it is necessary to do on the Lord's day; and no previous neglect to obtain the requisite information on a previous day creates a necessity for obtaining it on the Lord's day. If it

were held otherwise, a man having an important and necessary duty to perform might wilfully neglect to perform that duty through the whole week, and conclude to do it on Sunday, because it was an act necessary and proper to be done. In the case at bar, it is not sufficient that it was more convenient for the plaintiff to postpone his travelling to obtain the letter from his sister, in order that he might perform his private business. In *McGrath* v. *Merwin, ubi supra,* the plaintiff was repairing a wheel-pit on the Lord's day, and it was said in the opinion, " The only reason for doing the work on the Lord's day was, that the defendants were doing a large business, employing many hands, and 'the work done on the occasion would obviate the necessity of stopping the machinery in future.' The whole import of this is that it was more convenient and profitable to repair the wheel-pit on the Lord's day than it would be to do it on any secular day. This does not make it a work of necessity or charity within the exception of the statute." The same duty, of ascertaining whether an act of charity towards his sister was to be done, had been resting on the plaintiff for two weeks. It would be an extraordinary proposition that he could elect to do an act on Sunday which he could have done equally well on any previous secular day within that fortnight, and which he had postponed because he had considered it subordinate to his secular business. Suppose he had travelled the previous Sunday, in order the sooner to finish his business and reach Boston and obtain this letter, it could not be contended that travelling on the previous Sunday was an act of charity. Or suppose he was under obligation to perform a contract, which it was his duty to complete before going on his charitable journey, and for that reason he performed secular labor all day Sunday, such labor would be neither necessary nor charitable within the meaning of the law.

It is apparent that the plaintiff's duty to his sister was made subservient to his secular business. We are therefore of opinion that the ruling should have been given, that there was no evidence which would justify the jury in finding that the plaintiff was travelling from necessity or charity, within the meaning of the statute. *Exceptions sustained.*